K8A8CLAP

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   UNITED STATES OF AMERICA,

4          v.                              20 Cr. 76 (NRB)

5   ZACHARY CLARK,

6             Defendant.                   Teleconference

7   ------------------------------x

8                                          New York, N.Y.
                                           August 10, 2020
9                                          12:05 p.m.

10  Before:

11                HON. NAOMI REICE BUCHWALD,

12                                         District Judge

13
                        APPEARANCES
14
    AUDREY STRAUSS
15       Acting United States Attorney for the
         Southern District of New York
16  MATTHEW HELLMAN
    GILLIAN GROSSMAN
17       Assistant United States Attorneys

18  FEDERAL DEFENDERS OF NEW YORK INC.
         Attorneys for Defendant
19  JONATHAN MARVINNY

20

21

22

23

24

25

K8A8CLAP

1           (The Court and all parties appearing telephonically)

2           THE COURT:  Good morning.  This is Judge Buchwald

3    speaking.  Could I take attendance on this call, which is in

4    United States v. Zachary Clark, 20 Cr. 76.

5           I can account easily for two people on the call,

6    myself and my law clerk.

7           Is there a court reporter on?

8           REPORTER:  Yes, Judge.  Good morning.  It's Eve

9    Giniger.

10          THE COURT:  Good morning, Eve.

11          Is Mr. Clark on the phone?

12          THE DEFENDANT:  Yes.  Good morning, Judge.  This is

13   Mr. Clark, Zachary Clark.

14          THE COURT:  Who is on the phone for the government?

15          MR. HELLMAN:  Good afternoon, your Honor.  This is

16   Matthew Hellman for the United States.  Gillian Grossman is

17   also on the line.

18          THE COURT:  Who is on the phone for Mr. Clark?

19          MR. MARVINNY:  Good afternoon, your Honor.  Federal

20   Defenders of New York.  This is Jonathan Marvinny for Mr.

21   Clark.

22          THE COURT:  There are two participants unaccounted

23   for.  Do any of you have interns on the phone?

24          MR. HELLMAN:  No, your Honor.

25          MR. MARVINNY:  Your Honor, again, I believe Mr.

K8A8CLAP

1    Clark's partner, Randy Jimenez, is on the call.

2              THE COURT:  OK.  I think I am still one short.

3              MS. WILLIAMSON:  Good afternoon, your Honor.  This is

4    FBI Special Agent Marcia Williamson.  And I am joined with FBI

5    Special Agent Courtney Bongiolatti, Special Agent Raymond

6    Esposito, NYPD Detective Constantine Papadopoulos, and FBI

7    Intern Samantha Bloecker.

8              THE COURT:  As I understand it, the purpose of this

9    proceeding today is for Mr. Clark to enter a plea of guilty.

10             So let's begin.

11             Mr. Clark, would you state your full name for record?

12             THE DEFENDANT:  Zachary James Clark.

13             THE COURT:  How old are you, Mr. Clark?

14             THE DEFENDANT:  42.

15             THE COURT:  42?

16             THE DEFENDANT:  Yes.

17             THE COURT:  What was the highest grade in school that

18   you completed?

19             THE DEFENDANT:  I have a GED.  Probably ninth grade.

20             THE COURT:  Are you now or have you recently been

21   under the care of a doctor or a mental health professional?

22             THE DEFENDANT:  I am currently under the care of a

23   health doctor.

24             THE COURT:  Is there a diagnosis that they are

25   treating you for?

K8A8CLAP

1        THE DEFENDANT:  Yeah.  I have generalized anxiety

2   disorder and borderline personality disorder, bipolar.

3        THE COURT:  If at any point you have any difficulty or

4   questions about what I am saying to you, will you let me know,

5   please?

6        THE DEFENDANT:  Yes.  Absolutely, Judge.

7        THE COURT:  Have you ever been hospitalized or treated

8   for alcoholism or narcotics addiction?

9        THE DEFENDANT:  Yes, I have.

10        THE COURT:  When was that?

11        THE DEFENDANT:  Multiple times, from the ages of, say,

12   17 up until 40, 41.

13        THE COURT:  31 or 41?

14        THE DEFENDANT:  41.  And my lawyer has, I believe, a

15   printout of all of the facilities and treatments I have been in

16   throughout the years.

17        THE COURT:  Are you under the influence of any drug or

18   alcohol today?

19        THE DEFENDANT:  No.

20        THE COURT:  How are you feeling physically today?

21        THE DEFENDANT:  OK.

22        THE COURT:  OK?

23        THE DEFENDANT:  Yeah.

24        THE COURT:  All right.  So did you authorize your

25   lawyer to sign on your behalf a waiver of your right to be

K8A8CLAP

1    present at a criminal proceeding?

2                THE DEFENDANT:  Yes.

3                THE COURT:  Before you authorized Mr. Marvinny to sign

4    that on your behalf, did you discuss with Mr. Marvinny your

5    right to physically appear in a courtroom before me to enter a

6    plea?

7                THE DEFENDANT:  Yes.

8                THE COURT:  I assume that Mr. Marvinny explained to

9    you that there are some challenges to in-person proceedings

10   given the COVID virus?

11               THE DEFENDANT:  Yeah.  I know it's slowing everything

12   down.

13               THE COURT:  Is it your wish to give up your right to

14   appear in front of me in person?

15               THE DEFENDANT:  Yes, your Honor.

16               THE COURT:  Also, of course, in the courtroom, you

17   would have your attorney right next to you, but he can't be

18   right next to you now.

19               Do you understand that?

20               THE DEFENDANT:  Yes.

21               THE COURT:  Do you waive that right to have him

22   physically really close by?

23               THE DEFENDANT:  Yes, your Honor.

24               THE COURT:  Of course, if there is something in the

25   course of this plea that requires you to talk to Mr. Marvinny

K8A8CLAP

1    in private, that can be arranged.

2              THE DEFENDANT:  OK.

3              THE COURT:  And you will let me know.  OK?

4              THE DEFENDANT:  Yes.

5              THE COURT:  Thank you.

6              I assume that you received at some point a copy of the

7    indictment in the case, correct?

8              THE DEFENDANT:  Yes, your Honor.

9              THE COURT:  Have you had sufficient time to discuss

10   the charges in the indictment and your plea with Mr. Marvinny?

11             THE DEFENDANT:  Yes, your Honor.

12             THE COURT:  Have you been satisfied with the advice

13   and counsel Mr. Marvinny has given to you?

14             THE DEFENDANT:  Yes, your Honor.

15             THE COURT:  Are you ready to enter a plea at this

16   time?

17             THE DEFENDANT:  Yes, your Honor.

18             THE COURT:  What is your plea to Count One of the

19   indictment, guilty or not guilty?

20             THE DEFENDANT:  Guilty.

21             THE COURT:  Mr. Clark, in order to determine whether

22   your plea is voluntary and made with a full understanding of

23   the charges against you and the consequences of your plea, I

24   will make certain statements to you and ask you certain

25   questions.

K8A8CLAP

1            THE DEFENDANT:  OK.

2            THE COURT:  I want you to understand that I need not

3    accept your plea unless I am satisfied that you are in fact

4    guilty and that you fully understand your rights.  OK?

5            THE DEFENDANT:  OK.

6            THE COURT:  So Count One charges you with providing,

7    and attempting to provide, material support or resources to a

8    foreign terrorist organization, namely, ISIS.  This crime

9    carries a maximum possible sentence of 20 years in prison, a

10   maximum term of supervised release of life, a maximum fine of

11   the greatest amount of $250,000, basically, a possible fine of

12   $250,000, and a $100 mandatory special assessment.

13           Do you understand that that is the charge against you

14   and the maximum possible penalty under the law for that charge?

15           THE DEFENDANT:  Yes, your Honor.

16           THE COURT:  Do you understand that in exchange for

17   your plea of guilty, that the government has agreed not to

18   prosecute you further --

19           THE DEFENDANT:  Yes.

20           THE COURT:  Let me just finish.

21           THE DEFENDANT:  OK.

22           THE COURT:  -- for providing, or attempting to

23   provide, material support to ISIS during the period of April

24   2019 up to and including November 2019, with the exception of

25   possible criminal tax violations?

K8A8CLAP

1              THE DEFENDANT:  Yes, your Honor.

2              THE COURT:  Do you also understand that it is part of

3     your plea agreement to admit the forfeiture allegation in the

4     indictment with respect to Count One?

5              THE DEFENDANT:  Yes, your Honor.

6              THE COURT:  Do you understand that you have the right

7     to plead not guilty and the right to a trial on the charges

8     against you and the right to a jury trial?

9              THE DEFENDANT:  Yes, I do.

10             THE COURT:  Do you understand that if you pled not

11    guilty and went to trial, that the burden would be on the

12    government to prove each and every element of the crime charged

13    beyond a reasonable doubt in order to convict you?

14             THE DEFENDANT:  Yes, your Honor.

15             THE COURT:  Do you understand that at a trial, you

16    would have the right to be represented by an attorney at all

17    stages of the proceeding and, if necessary, an attorney would

18    be appointed for you?

19             THE DEFENDANT:  Yes, your Honor.

20             THE COURT:  Do you understand that at a trial, you

21    would have the right to confront and cross-examine witnesses

22    against you and the right not to be compelled to incriminate

23    yourself?

24             THE DEFENDANT:  Yes, your Honor.

25             THE COURT:  And do you understand that at a trial, you

K8A8CLAP

would be presumed innocent until such time, if ever, the

government established your guilt by competent evidence to the

satisfaction of the trier of fact beyond a reasonable doubt?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  And do you understand that at a trial, you

would have the right to testify and would also be entitled to

compulsory process, in other words, the right to call other

witnesses on your behalf?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  Do you understand that if your plea is

accepted, there will be no further trial of any kind, so that

by pleading guilty you are waiving your right to a trial?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  Do you understand that if you are

sentenced to a period of supervised release and if you violate

the terms of your supervised release, that an additional period

of jail time may be imposed without credit for the time that

you had previously spent on supervised release?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  Do you understand that in connection with

your plea of guilty, that the Court may ask you certain

questions about the offense to which you have pled, and if you

answer those questions under oath, on the record, and in the

telephonic presence of counsel, that your answers, if false,

may later be used against you in a prosecution for perjury or

K8A8CLAP

1   false statement?

2            THE DEFENDANT:  Yes, your Honor.

3            THE COURT:  Mr. Clark, what country are you a citizen

4   of?

5            THE DEFENDANT:  United States.

6            THE COURT:  Now, have you received a copy of the plea

7   agreement in this case?

8            THE DEFENDANT:  Yes, I have.

9            THE COURT:  Did you have an opportunity to review the

10  plea agreement with Mr. Marvinny?

11           THE DEFENDANT:  Yes, I did, your Honor.

12           THE COURT:  Mr. Marvinny, I think I understand that

13  there is a request that the Court affix Mr. Clark's signature

14  to the plea agreement.  Is that correct?

15           MR. MARVINNY:  That's correct, your Honor.

16           THE COURT:  Mr. Clark, after receiving the plea

17  agreement and reviewing it with Mr. Marvinny, do you agree to

18  it and authorize the Court to sign it on your behalf?

19           THE DEFENDANT:  Yes, I do, your Honor.

20           THE COURT:  All right.  Mr. Clark, separate and apart

21  from the plea agreement itself, have any threats or promises

22  been made to you to make you plead guilty?

23           THE DEFENDANT:  No, your Honor.

24           THE COURT:  Again, separate and apart from the plea

25  agreement itself, have any understandings or promises been made

K8A8CLAP

1  to you concerning the sentence you will receive?

2          THE DEFENDANT:  No, your Honor.

3          THE COURT:  Is your plea voluntary, in other words, of

4  your own free will?

5          THE DEFENDANT:  Yes, it is, your Honor.

6          THE COURT:  So let me review some portions of the plea

7  agreement with you.

8          First, the plea agreement contains a stipulated

9  guidelines range of 240 months in prison.

10          Do you understand that?

11          THE DEFENDANT:  Yes, I do.

12          THE COURT:  There is also a stipulated fine range of

13  from $40,000 to $400,000.

14          Do you understand that?

15          THE DEFENDANT:  Yes, I do, your Honor.

16          THE COURT:  Do you understand that the parties have

17  agreed that neither an upward nor a downward departure from the

18  stipulated guidelines range is appropriate, but that either

19  party may seek a sentence outside of the stipulated guidelines

20  range?

21          THE DEFENDANT:  Yes, your Honor.

22          THE COURT:  Do you understand that if there is

23  information that the government does not currently know, that

24  it has reserved the right to argue for another guidelines

25  range?

K8A8CLAP

1          THE DEFENDANT:  Yes, your Honor.

2          THE COURT:  Do you understand that neither the

3    probation office nor the Court is bound by the guideline

4    stipulation?

5          THE DEFENDANT:  Yes, your Honor.

6          THE COURT:  And that the sentence to be imposed upon

7    you is determined solely by the Court?

8          THE DEFENDANT:  Yes, your Honor.

9          THE COURT:  And do you understand that you have agreed

10   that if you receive a sentence within or below the stipulated

11   guidelines range of 240 months, that you will not file a direct

12   appeal or otherwise challenge your sentence?

13         THE DEFENDANT:  Yes, your Honor.

14         THE COURT:  Are you pleading guilty because you are in

15   fact guilty?

16         THE DEFENDANT:  Yes, your Honor.

17         THE COURT:  Do you understand that this plea agreement

18   does not bind any prosecutor other than the U.S. Attorney's

19   Office for the Southern District of New York?

20         THE DEFENDANT:  Yes, your Honor.

21         THE COURT:  Do you understand that apart from any

22   written proffer agreement that you may have entered into with

23   the U.S. Attorney's Office, that this agreement takes the place

24   of any prior understanding you may have had with the U.S.

25   Attorney's Office, and that this plea agreement cannot be

K8A8CLAP

1    modified except in a writing signed by all parties?

2              THE DEFENDANT:  Yes, your Honor.

3              THE COURT:  Mr. Clark, did you commit the offense that

4    you have been charged with in the indictment?

5              THE DEFENDANT:  Yes, your Honor.

6              THE COURT:  Could you tell me in your own words what

7    you did?

8              THE DEFENDANT:  Sure.

9              I would say probably around 2019 or so, I knowingly

10   did provide, create, distribute propaganda on social media for

11   an organization at the time I knew had prior engagement to

12   terrorism.  A majority of the stuff took place while I was in

13   the Bronx.  And my conduct was wrong and illegal, so I take

14   accountability for that, ownership.  I do apologize to the

15   people.

16             That about sums it up.

17             THE COURT:  You said you were creating on social media

18   material for an organization that you knew had terrorist

19   connections, is that right?

20             THE DEFENDANT:  Yes.  That's right.

21             THE COURT:  And, specifically, were you aware that it

22   had connections with ISIS?

23             THE DEFENDANT:  Yes, I was.

24             THE COURT:  Mr. Hellman, are there any other questions

25   that you want me to ask Mr. Clark?

K8A8CLAP

1          MR. HELLMAN:  Your Honor, specifically, is the Court

2    asking if there are additional questions for Mr. Clark with

3    respect to the offense conduct?

4          THE COURT:  Exactly.  Because that's something that

5    you know more about than I do.

6          In other words, is his allocution sufficient in terms

7    of the offense?  That's my question.  Is there something else

8    you would like me to ask him?

9          MR. HELLMAN:  I believe the allocution is sufficient

10    as far as the offense conduct is concerned.  Thank you, your

11    Honor.

12          THE COURT:  Do you think the allocution is defective

13    in some other way?

14          MR. HELLMAN:  No, your Honor.

15          THE COURT:  Just curious.

16          Mr. Clark, do you still wish to plead guilty?

17          THE DEFENDANT:  Yes, your Honor.

18          THE COURT:  And, Mr. Marvinny, do you know of any

19    reason why Mr. Clark ought not to plead guilty?

20          MR. MARVINNY:  No, I don't, your Honor.

21          THE COURT:  Mr. Clark, I am satisfied that you

22    understand the nature of the charge against you and the

23    consequences of your plea, and that your plea is made

24    voluntarily and knowingly, and that there is a factual basis

25    for it.  Accordingly, I will accept your plea of guilty and

K8A8CLAP

1     direct that a presentence report be prepared.

2           From my own calculations, the presentence report

3     should be ready by November 2nd, but I was going to ask the

4     parties for guidance as to the submission of sentencing

5     submissions.  Given the nature of the case, I thought possibly

6     it might take a little longer, but as I say, I am happy to

7     receive your suggestions.

8           MR. MARVINNY:  Yes.  I appreciate that invitation from

9     the Court.  I was going to ask the Court for at least six

10    months for sentencing for the reasons you have already

11    identified.  We are collecting various documents and records on

12    Mr. Clark, and we are obviously going to be putting together a

13    very substantial submission.  So I think six months would be,

14    especially given the current conditions, six months would

15    probably be the minimum time that I would ask for.

16          THE COURT:  Of course, with the understanding that he

17    stays -- where is he, by the way?

18          MR. MARVINNY:  He is at the MCC.

19          THE COURT:  That means he stays at the MCC.

20          MR. MARVINNY:  I understand that, your Honor.

21          THE COURT:  And he understands that that's, in a

22    sense, the possible trade-off?

23          MR. MARVINNY:  Yes, I believe Mr. Clark understands

24    that.

25          THE COURT:  I assume the government has no objection

K8A8CLAP

1    to a somewhat delayed sentencing.

2              MR. HELLMAN:  That's correct, your Honor.  The

3    government previously discussed that with defense counsel and

4    understands that the sentencing may be somewhat delayed.

5              Separately, I will just ask, after addressing this

6    portion of the proceeding, the government would ask for a brief

7    opportunity to make a record.

8              THE COURT:  OK.  Why don't you go ahead and do that.

9    We can always get back to scheduling.

10             MR. HELLMAN:  Thank you, your Honor.

11             I think my cue might have been a little earlier, but I

12   apologize for that.

13             The government would like an opportunity at this point

14   to briefly summarize the evidence, what it expects it will show

15   at trial, just quickly summarize the elements of the offense.

16             THE COURT:  You know, you're right.  I missed the

17   question.  I apologize.  I went right past that part of my

18   script.  I apologize for that.  Totally my fault.

19             MR. HELLMAN:  Of course.  Not a problem at all.

20             THE COURT:  Judges can do no wrong.  I understand

21   that.

22             MR. HELLMAN:  Very good, your Honor.

23             With respect to the elements, which I think makes

24   sense to address first, the elements that the government is

25   required to prove beyond a reasonable doubt with respect to

K8A8CLAP

1   Count One are as follows:

2           First, that the defendant attempted to provide

3   material support or resources, which includes training,

4   services and personnel, among other qualifying categories, to a

5   foreign terrorist organization, here, ISIS.  The government, to

6   be clear, would prove that the defendant attempted and did

7   provide material support and resources to ISIS;

8           Second, that the defendant acted intentionally and

9   knowingly, in that he knew either that the organization was

10  designated as a foreign terrorist organization or that the

11  organization engaged in terrorist activity or terrorism; and

12          Third, that at least one of the jurisdictional

13  requirements set forth in subsection (d) of Section 2339B is

14  satisfied.  Such requirements include that either the defendant

15  is a national of the United States or that the offense

16  occurred, in whole or in part, within the United States.

17          The government would also need to establish by a

18  preponderance of the evidence that venue was proper in the

19  Southern District of New York.

20          If your Honor will allow, I can proceed to a proffer

21  as far as the government's proof as to each of those elements.

22          THE COURT:  You may proceed.  I think I should ask the

23  question I would normally ask at this point of Mr. Clark.

24          Mr. Clark, do you understand that in order to convict

25  you, the government would have to prove beyond a reasonable

K8A8CLAP

1    doubt each and every element of the crime that the government

2    has just outlined?

3               THE DEFENDANT:  Yes, I do, your Honor.

4               THE COURT:  Mr. Hellman, you may proceed.

5               MR. HELLMAN:  Thank you, your Honor.

6               If this case were to proceed to trial, the

7    government's evidence would include the following:

8               First, testimony of law enforcement officers and other

9    witnesses;

10              Second, the government would introduce in evidence

11   electronic communications, including communications over an

12   encrypted application.  Those communications include, among

13   others, communications between the defendant and multiple

14   undercover FBI employees and confidential sources; the

15   defendant's publicly accessible posts in over a dozen pro-ISIS

16   chat rooms, which include the following examples, among

17   numerous others:  Graphics encouraging violent attacks on

18   tourist attractions, crowds, public transportation, such as the

19   subway, and members of law enforcement in New York City; a

20   three-part video on making a suicide bomb; a manual on

21   conducting random lone-wolf-style attacks, such as firing a

22   weapon and brandish through crowds, driving trucks through

23   crowds, developing chemical weapons, and methods on evading law

24   enforcement detection; a manual on conducting knife attacks

25   with lethal methods to use; more than 100 manuals available for

K8A8CLAP

download addressing, among other things, cyanide poisoning of food supplies, explosives, firearms, chemical weapons, biological weapons, suicide belts, homemade bombs, and other weapons of jihad.

The government would also introduce evidence obtained pursuant to searches of the defendant's electronic devices; evidence obtained pursuant to searches of the defendant's social media e-mail accounts, including, for example, a video in which the defendant pledged bayat, or allegiance, to ISIS's leader; physical evidence including evidence seized from the defendant's Brooklyn residence at the time of his arrest pursuant to search warrants, including dozens of books, such as volumes on ISIS terrorism around the world, warfare tactics, jihad and Osama bin Laden, a handmade ISIS flag, a drawing of the ISIS flag, and a stencil containing the emblem of ISIS.

The government would also introduce a video recording of the defendant's post-arrest admissions and law enforcement testimony regarding physical surveillance of the defendant which places him in the Bronx during certain portions of the offense conduct, as well as cell phone GPS data showing that the defendant committed portions of the offense conduct in the Bronx, in New York.

The government submits all of this evidence would prove that the defendant joined, or attempted to join, ISIS by pledging allegiance to the group's leader, and that he

K8A8CLAP

1    provided, and attempted to provide, material support to the

2    group by disseminating (a) graphics promoting violent terrorist

3    attacks on ISIS's behalf in New York City and other locations;

4    (b) numerous manuals and other instructional materials

5    detailing how to make bombs and other weapons, and how to plan

6    and execute and arrange different terrorist attacks; (c) other

7    propaganda encouraging others to join ISIS and commit violent

8    attacks on behalf of a terrorist organization.

9              I will stop there, your Honor.

10             THE COURT:  Thank you.

11             So let's just return to the scheduling dates.

12             Mr. Marvinny, if we were counting out six months, I

13   think we would be in February.

14             MR. MARVINNY:  That's right, your Honor.  I think

15   that's right.

16             THE COURT:  My law calendar stops at January.  So

17   that's what I am working from here at home.

18             MR. MARVINNY:  Your Honor, may I just say, I am happy

19   to set an earlier sentencing date.  I certainly don't want to

20   prejudice my client.  I was just trying to be realistic and

21   avoid the need to seek adjournments.

22             THE COURT:  Let me say this.  First of all, I may not

23   have understood what you said.  Did you want a sentencing date

24   six months out or did you want six months to make your

25   submission?  I may have been confused on that.

K8A8CLAP

1          MR. MARVINNY:  Well, your Honor, I think both, in that

2     normally I would file my submission two weeks before

3     sentencing.

4          THE COURT:  Given what you're talking about, in other

5     words, if you're taking six months to create a tome for the

6     sentence, you might want to give me a little more time, because

7     I assume that the government is likewise going to make a

8     substantial submission.  I gather that from what I just heard.

9          Let me say this.  On one level I would regard all

10    dates going forward as theoretical, or certainly subject to

11    change, because I don't know that any of us have the capacity

12    to accurately predict, in a sense, the state of the world many

13    months from now.  So I am happy to set a date.  I am also aware

14    that, unlike other times when I kind of tend to regard them as

15    cast in stone, although, frankly, counsel may not regard them

16    quite as cast in stone as I do, I am very willing to be

17    flexible.

18         So I am truly just asking for your guidance.  You tell

19    me what is realistic.  As I said, if pretrial produces its

20    report on the standard schedule, that will be November 2nd.

21    That may be somewhat delayed these days, but I have not been

22    told that I can't use the standard schedule as the baseline.

23    Beyond that, I really am totally receptive to any suggestions

24    from counsel.

25         MR. MARVINNY:  Understood, your Honor.  I think, given

K8A8CLAP

1    what the Court said, it might make sense to set a sentencing

2    date about six months or so from now, and I will make an effort

3    to get the Court my submission, whether it qualifies as a tome

4    or not, sufficiently in advance of that date so the Court has

5    time and the government has time to review it.  So I would get

6    it in more than two weeks in advance; and if I need more time,

7    I suppose I can come back.  But I think with a sentencing date

8    six months from now, I would hopefully be able to file my

9    submission well in advance of that date such that the Court

10   will have a chance to review it.

11              MR. HELLMAN:  Just to be clear, the government heading

12   into these proceedings understood it wouldn't be that lengthy a

13   request, as everyone hopes that by the time sentencing arrives

14   we are in a different landscape where in-person proceedings

15   have returned.  Certainly, given the high demand and limited

16   availability of a video teleconference for MCC inmates, the

17   parties agreed that proceeding today, even though sentencing in

18   our minds was somewhat in the future, was necessary because the

19   government's plea offer was time-sensitive, and, in part,

20   conditioned on preservation of government resources, I think

21   the parties agreed there would have been serious harm to the

22   interest of justice if the plea agreement was not available to

23   Mr. Clark by moving or not being able to enter the plea

24   remotely.

25              THE COURT:  I certainly agree with that.  I broadly

K8A8CLAP

1   feel that not moving a case along, when it's ready to move

2   along, has many aspects which affect the interest of justice in

3   a serious way.

4         So if we were just doing six months to the day, we

5   could maybe set the sentencing for February 9, which is a

6   Tuesday, at let's say 11:30, with the full understanding that

7   if for some reason we need to change it because of the

8   complexity of the submissions that is feasible, and I would

9   expect the defendant's submission, let's say, by January 8.

10        Shall we say the government's by January 27?

11        MR. HELLMAN:  That's fine with the government.

12        MR. MARVINNY:  Yes, your Honor.  That is fine with the

13   defense.

14        THE COURT:  So anything else we should be covering

15   today?

16        MR. HELLMAN:  Your Honor, I think I just caught a

17   small portion of the plea agreement that, while the defendant

18   is here and under oath, it makes sense to address.

19        Just briefly, first, to be clear, that the defendant

20   had agreed not to appeal any term of supervised release less

21   than or equal to the statutory maximum.

22        Second, that the defendant agreed not to appeal a fine

23   of less than or equal to that which your Honor mentioned of

24   $400,000, and that the government likewise will not appeal any

25   fine greater than or equal to $40,000.

K8A8CLAP

1          Finally, the defendant waived, or is waiving via this

2   plea agreement, any right to withdraw the plea or attack the

3   conviction on appeal or collaterally on grounds that the

4   government failed to produce discovery information, Jencks Act

5   material --

6          THE COURT:  I don't allocute on that, deliberately,

7   the last thing.

8          MR. HELLMAN:  Understood, your Honor.

9          With respect to the first two I mentioned -- sorry,

10  your Honor.

11         THE COURT:  You think that's in this plea agreement

12  someplace?

13         There is a general understanding that he won't appeal

14  a sentence within the stipulated guidelines range.  I see the

15  fine.  That's fine.  If you think that's important, we can make

16  sure that Mr. Clark agrees that he won't appeal the fine or the

17  supervised release portion of the sentence so long as it is not

18  above the statutory maximum, which I doubt I would ever have

19  imposed.

20         THE DEFENDANT:  I agree to all of that.

21         MR. HELLMAN:  Thank you, your Honor.

22         So just to be clear, those three portions of the plea

23  agreement I just alluded are specified on page 5.

24         THE COURT:  Yes.

25         MR. HELLMAN:  Thank you, your Honor.

K8A8CLAP

1            THE COURT:  Anything else?

2            MR. HELLMAN:  Not from the United States.  Thank you,

3    your Honor.

4            THE COURT:  Mr. Marvinny, anything?

5            MR. MARVINNY:  Nothing.  Thank you, your Honor.

6            THE COURT:  Very good.  Take care everyone.

7            (Adjourned)

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25